## WIGHTMAN vs. KARSNER.

1. The Court of Commissioners of Roads and Revenue in this State has no power to hold special terms, except in cases expressly authorized by law; and all orders made at such unauthorized terms are *coram non judice*, and void.

2. The orders of a court acting without authority are nullities, and may be inquired into, and impeached, in all other courts, before which such orders are brought and relied upon by a party claiming a right or benefit under them.

3. A claim against a county, audited and allowed at an unauthorized term of the Commissioners' Court, creates no liability on the county, and the county treasurer may rightfully refuse to pay it.

ERROR to the Circuit Court of Lauderdale.
Tried before the Hon. L. P. Walker.

Motion against county treasurer under the statute.

The plaintiff in error moved for judgment against the defendant as treasurer, of the county of Lauderdale, in the Circuit Court of said county, on a certificate of allowance of a claim in favor of John R. Henry, which is in the following words and figures: "The State of Alabama, Lauderdale county. Commissioners' Court, Special Term, 4th April, 1849. Ordered by the Court, that John R. Henry be allowed two thousand two hundred and ten dollars, the balance due him on final settlement of his contract for building Shoal Creek Bridge, with interest thereon from the 1st day of December, 1848. No. 596. $2,210. W. T. HAWKINS, *Clerk*."

On which was endorsed, "No. 980. The treasurer of Lau-

Wightman v. Karsner.

derdale county will pay the within to John Wightman, for
value received.                    JOHN R. HENRY."

The other evidence in the case shows, that this claim was
presented to one Joseph Bigger, who was then treasurer of
Lauderdale county, and was by him registered in a book kept
by him for the purpose; that after the death of Bigger, the
defendant was appointed treasurer, to whom the plaintiff pre-
sented his claim for payment, which was refused.   It was also
proved that the defendant had paid several thousand dollars
of claims against the county, which had been presented and
registered after that of the plaintiff, and that the defendant
had had ample means in his hands to have paid the claim, if
he had paid the claims against the county in the order of their
registration.

On this proof, the court below charged the jury, "that if
they believed that the claim, now the foundation of the plain-
tiff's motion, was audited and allowed at a special term, held
by the Judge of the County Court, and Commissioners of Re-
venue and Roads of the county of Lauderdale, and not at
one of the regular terms held at the times appointed by law,
the plaintiff in this motion cannot recover."

To this charge of the court the plaintiff excepted, and as-
signs it for error in this court.

ORMOND & NICOLSON, for plaintiff in error.

We contend first: There is nothing in the act creating the
court which prevents it from holding a special term.

The first section of the act (Clay's Dig. 149) gives this court
the jurisdiction over roads, bridges and ferries, the levying of
the county tax, and the appointment of county officers; and
the second section declares that for the performance of the
duties enjoined, the court shall meet at certain designated pe-
riods, and the next section gives them power to make appro-
priations for county purposes, and gives them control over
the funds of the county.

This was a case of that kind: it was the auditing an ac-
count for building a bridge, and directing its payment.   There
does not appear to be any good reason why the court might
not hold a special term for the performance of any county
business than that enumerated in the first section, and great

inconvenience might result. For instance, the condition of treasurer's bond is, that from time to time, and at *all times when required*, he shall render a true account to the Commissioners' Court. Suppose his securities be about to fail, and he be squandering the county funds, cannot the court have a right to call upon him immediately for new security and a settlement? Surely they could under the act of 1848, (Sess. Act, p. 102) which gives them the power to hold a court whenever in their opinion the public *convenience requires it.*

Again: The act of 1806 (Clay's Dig. 142) which prescribes the manner of auditing, registering and paying claims against the county, was passed long anterior to the existence of the Commissioners' Court, and although the Commissioners' Court succeeded to the duties which the act of 1806 imposed on the old justices and County Court, no argument can be drawn from the use of the words, "*in term time*," because that language had no reference to the Commissioners' Court as now constituted. (See the original act, Aikin's & Toulmin's Dig.) All that the act meant to declare was, that the powers should be exercised by the justices sitting as a court, the opposite of "*term time*," not being as contended *regular*, as opposed to *special* terms, but action in open court, as opposed to action by the members *not sitting* as a court. We insist, therefore, that there is nothing in the act referred to which prohibits the court from holding a session whenever the wants or the business of the county demanded it, even as to subjects enumerated in the first section. But if that were not so, the control given them over the county treasury in the third section is an independent grant of power, in the exercise of which they are not confined to the terms prescribed by the first section, and if the act of 1806 is to exert any control over the subject, it merely confines the court in the exercise of the powers to "*term* time," viz: not in vacation.

But independent of this criticism on the two acts mentioned, an act was passed in 1848, by which the commissioners were authorized to change the time of holding this court, whenever, in their judgment, the *public convenience* required it. (Acts '48, p. 102, § 6.) Surely, then, when they do hold a court for the transaction of business, and audit and pass an account by which a right is vested, it must be held that

the court was convened because the public convenience required it, of which convenience they are made the exclusive judges. The public convenience would be advanced by increasing the number of terms in a year, not by merely changing the times of holding the stated terms.

As the court unquestionably had jurisdiction of the subject matter, its action is not void, but voidable merely, and cannot be impeached collaterally by any one, especially not by a stranger to the proceeding, as the county treasurer is. The effect of the order of the court was, a direction to the treasurer to pay the money, and the claim was presented, numbered, placed on the book of the treasurer, and a sufficient fund is shown from which it might have been paid. It does not then lie in the treasurer's mouth to question the power of his principal, the Commissioners' Court. 7 Ala. 85; 15 Ala. 134; 1 Rich. 335; 1 Con. 1; 1 Kelly, 271; 2 How. U. S. 338, et seq.

R. W. WALKER, contra.

1. The Commissioners' Court is a court of special and limited jurisdiction: and it is a general rule, that nothing will be intended in favor of the jurisdiction of such a court, but every thing necessary to sustain it must affirmatively appear on the face of the record. 18 Ala. Rep. 694; 18 Ala. Rep. 482 (487); 16 Verm. 246; 3 Phil. Ev. 1013, and cases cited; 1 U. S. D. 629, and cases cited; 3 Phil. Ev. 987, 1021, 1104; 15 Ala. Rep. 134.

2. If there is a want of jurisdiction, the judgment or proceedings are coram non judice and void. They may be impeached collaterally in any other court, where any right or benefit is sought to be taken under them. 16 Ala. 280; 6 Porter, 219; 10 Peters, 449; 13 ib., 511; 1 ib. 340; 3 Howard U. S. 762; 11 Wend. 655; 3 Phil. Ev. 990, and authorities; 2 Suppl. U. S. D. 230, 249, and cases cited; 6 Wheaton, 119; 8 Sm. & M. 85, 421, 505; 5 Hill, 568; 1 Denio, 158; 6 Howard Miss. 168.

3. If a court of limited jurisdiction does not proceed according to the mode prescribed by the statute, its acts are nullities. 5. Black. 462; 3 Phil. Ev. 987-8-9-90, 995-6; 1 Bailey, 457, and authorities supra.

4. Jurisdiction is the power to hear and determine the cause; and there is no jurisdiction, either when the *subject-matter* of the cause is one of which the court has not legal cognizance, or when the *person* proceeded against is not sub-ject to its control, or when the *process* by which the cause has been instituted is one which the court cannot issue, or when the *mode of proceeding* prescribed by law has not been pursued, or when the court is held at a *time* or *place* not authorized by law. 3 Phil. Ev. 993, 997, 1000, 1002, 1003; 2 How. U. S. R. 338; 3 How. U. S. 762.

5. Where a court is held at a *time* or *place* not authorized by law, its proceedings are *coram non judice* and void. 1 Ala. Rep. 351; 2 Pike, 229 (250–1–2); 27 Maine, 114; 1 Scam-mon, 555; 2 ib. 227; 2 ib. 303; 3 Blackf. 501; 2 Cowen, 445; 1 U. S. D. 631, § 95; 8 Term R. 431; Marshalsea case, 10 Coke R. 76; 3 Phil. Ev. 1003, 1007; 2 Blackf. 305, 306; 3 H. & J. 560; 7 ib. 79; 1 G. & J. 184; 6 C. & P. 337; 6 Cowen, 456, 463.

The case of Lewis v. Intendant of Gainesville, 7 Ala. Rep. 85, is not in point. There the proceeding was had at an *adjourned* term, not a *special* one, and the record recited that fact; *here the record shows affirmatively* that the *order was made at a special term, and that there was no evidence that such special term had been previously ordered.* In the case in 7 Ala. Rep. 85, the order was really made at a *regular* term; for an *adjourned* term is part of the regular term. Every court has the power to adjourn its sittings, and an adjourned session is a mere continuance of the regular term from which the ad-journment was made. 2 Pike, 229, 250; 5 Mass. 435; 6 Wheat. 106.

But a *special* term is not part of the regular term. It is entirely distinct and substantive; and the power to hold a *special* term must be given by statute. 7 Yerger, 365; 2 Pike, 229, 250; 6 Yerger, 395; 2 Scammon, 303; 13 Sm. & M. 153, 156.

Whenever *special* terms, as distinct from the regular ones, have been held by the Commissioners' Courts, they have been authorized by *special* acts. Acts of '43, 137, 156; Acts of '45, 14, 63.

6. The Act of '48, Acts, p. 103, has no application. It

simply authorizes the Commissioners to *change* the *time* of holding their court, *i. e.* to change the *time* when by preexisting law they were required to hold their court. The whole object and effect of the act were, to authorize them to alter the time of holding their regular terms.

LIGON, J.—The charge of the court below, which is here assigned for error, proceeds upon the assumption, that the *special* term of the Court of Commissioners of Revenue and Roads for the county of Lauderdale, at which the claim of Henry was audited and allowed, was held without authority of law, and consequently its acts were *coram non judice* and void.

If the Court of Commissioners of Revenue and Roads, at the session at which this claim was audited and allowed, was clothed with all the attributes necessary to give it jurisdiction, the manner of its exercise is certainly regular in this instance.

Jurisdiction, when applied to courts, is defined to be the power to hear and determine the cause. But, before a court of limited jurisdiction will be sustained in its action, even in cases in which, by the law creating it, it had full power to hear and determine, it must be shown by the record, that every preliminary required by law has been complied with before it acted. 18 Ala. Rep. 694, and authorities there cited. That the Court of Commissioners of Revenue and Roads is the creature of the statute, and one of limited authority or jurisdiction, has been several times ruled by this court. 18 Ala. Rep. 694; ib. 482. One essential ingredient to the exercise of jurisdiction by any court, for the sessions of which a time is appointed by law, is, that it act within *the time* prescribed, and should it fail to do so, or presume to act at another and a different time, such acts are absolutely void. Cullum v. Casey, 1 Ala. Rep. 351; 27 Maine Rep. 114; 2 Scammon, 227; 1 ib. 555; 3 Blackf. 501. In the case before us, the claim on which the suit is founded, appears to have been audited and allowed, at a "*special term*" of Commissioners' Court, held on the 4th of April, 1849; and the question arises, had that court authority of law to hold such a session? It is entitled in the record, a "special term," as contra-distinguished from

a *regular* or *adjourned* term of the court. By the former, we understand a term appointed by the presiding officer or officers, held at an unusual time, for the transaction of some particular business. By the latter is meant, a term begun at the time appointed by law, and continued, at the discretion of the court, to such time as it may appoint, consistent with law. We have sought our statutes in vain, for authority in the Courts of Commissioners of Revenue and Roads, to hold *special* terms of their courts, except for fixed purposes named in the acts giving such authority. By the 28th section of the act of 1821, four Commissioners of Revenue and Roads are directed to be elected for each county, two of whom, with the judge of the County, (now Probate) Court, shall constitute a court, whose powers and duties are defined. Clay's Digest, 149, § 1. By the first section of the same act, as amended by the act of 1824, the terms of these courts are appointed to be held on the first Mondays in December, February, and May, and third Monday in August. Clay's Dig. 149, § 2. In none of the acts concerning this court, before the act of 1848, is any other direction given for the holding of its terms, except, in the revenue laws of the State, a special term has sometimes been directed to be held, for the sole purpose of levying the county tax, but from these, no authority to hold a term like the one we are now considering, can possibly be derived.

But it is contended, that by the sixth section of the act of 1848, entitled "an act to reform the evils arising from local legislation," (Sess. Acts, 1848, p. 100), it was intended to confer the power of holding special terms upon the Commissioners of Revenue and Roads, and that in their capacity as such, without assembling as a court, on any day regularly appointed by law for that purpose, they may appoint the time for holding their courts, and such appointments will be good, and the terms held pursuant to it will be both legal and regular. Several reasons, too important to be disregarded, forbid us from adopting this construction of that act.

In the first place, before the passage of that act, the General Assembly was repeatedly annoyed with applications from the several counties in the State, for acts to authorize the Commissioners' Courts of some one county to hold one or

more of its regular terms at periods of time different from those fixed by the general law. The acts of that body, before 1848, and even during the session of that year, show that such applications were granted, and laws passed pursuant to them. The leading object, then, of the General Assembly, in the passage of the act referred to, was correctly set forth in its caption, and must be held to be, to give authority to the Commissioners' Court, while sitting as such, to order its regular terms to be held at times different from those fixed by the act of 1824, above referred to. This would free the General Assembly from the necessity, in future, of passing acts for this purpose.

That it was not intended to confer the power to appoint a term of their court on the Commissioners of Revenue and Roads, in their individual capacity, we think, will sufficiently appear, from an examination of the several sections of the act itself. By the fifth section of the act, power is given to "the Commissioners of Revenue and Roads" whenever it may be necessary to levy a tax for county purposes, to levy it. The same careless phraseology is employed in the sixth section, which confers the power to alter the terms of their court, when the public convenience may require. The General Assembly could not have intended to clothe the Commissioners, in their individual capacity, with the powers enumerated in the fifth section of the act, nor can we suppose they designed to employ the same phrase, in a different sense in the sixth section; in both places it should be understood as though it read, "the *Court* of Commissioners of Revenue and Roads," &c.

Our conclusion is, that the *special* term of the Commissioners' Court of Lauderdale county, at which the claim on which plaintiff's motion is founded was audited and allowed, was not held at a time authorized by law, and consequently its proceedings were *coram non judice*, and void.

2. Having seen that the proceedings of the court, at which the claim of the plaintiff was audited and allowed, were void for want of jurisdiction, it only remains to be seen whether the defendant could avail himself of it in a collateral proceeding. As far as our search has extended, the best authorities on the subject concur in saying, that a judgment *void* in one court, is not binding upon any other court, in which an in-

Wightman v. Karsner.

terest arising under it is sought to be enforced. If the proceedings were merely irregular or erroneous, and liable to be set aside on appeal or writ of error, the case would be different.

The cases of Davison and another v. Gill, (1 East. 64) and Welch v. Nash, (8 East. 394) were both actions of trespass *quare clausum fregit*, brought by the owners of land, against persons for shutting up an old, and opening a new, foot-path through the premises of the plaintiffs, and the defendants sought to justify by an order of the justices of the peace under the statute (13 Geo. 3, c. 78, § 19) which gave such justices jurisdiction over the subject matter, and pointed out the manner in which it should be called into action, and exercised; and in both these cases the court permitted the plaintiff to show that the orders, under which the defendants acted, were not made by the justices according to the requirements of the statute conferring the jurisdiction, but that they were such gross departures from it as to be void, and thus afforded the defendants no protection whatever. Void orders and judgments have been allowed to be impeached collaterally, when those who claimed rights under them have sought to enforce them, by the Supreme Court of the United States, in the case of Elliot *et al.* v. Piersol *et al.* (1 Peters, 341) in which that court employs this language: "When a court has jurisdiction, it has a right to decide every question which occurs in the cause: and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding on every other court. But if it act without authority, its judgment and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to reversal, in opposition to them. They constitute no justification; and all persons concerned in executing such judgments or sentences, are considered in law as trespassers. This distinction runs through all the cases on the subject; and it proves, that the jurisdiction of any court exercising authority over a subject, may be inquired into in every court, when the proceedings of the former are relied on and brought before the latter, by the party claiming the benefit of such proceedings."

Such is the rule laid down by the Supreme Court of the United States, and we believe it to be the true one, especially

in relation to courts of limited jurisdiction. See also 10 Peters, 449; 13 ib. 511; 6 Wheat. 119; 3 Howard U. S. Rep. 762. It has been recognized and acted upon in New York, 5 Hill, 568; 11 Wend. 652; 1 Denio, 158: in Mississippi, 6 How. Miss. Rep. 106; 8 Smedes & Marshall, 521 and 505: in Vermont, 16 Ver. 251: in Illinois, 4 Scam. 364: and in Arkansas, 5 Pike, 424.

In the case of Cole, Adm'r, v. Connolly, 16 Ala. Rep. 280, this court quotes approvingly the language of Mr. Justice Baldwin, in the case referred to in 10 Peters, 449, which is at least as strong as that which we have quoted from Mr. Justice Trimble, in the one cited from 1 Peters, 341.

The decision of this court, in the case of Lewis v. the Intendant and Town Council of Gainesville, (17 Ala. Rep. 85) we hold to be proper, upon the facts of that case. But we are constrained to dissent from the strong language employed by the Judge who delivered the opinion of the court, especially from that portion of it in which he repudiates the right of collaterally inquiring into the legality of the time of holding the session of the court at which the order was made, the validity of which is called in question collaterally, in a proceeding by which the party to the void order seeks a benefit under it. But, we repeat, this point did not necessarily arise in that case, and what is said upon it must be regarded as a dictum. The order there sought to be impeached, purported to have been made at an "adjourned term" of the Commissioners' Court, and it was correctly remarked in that case, that "it is not necessary to validate the acts of the Commissioners' Court, that it should have adjourned from day to day, down to the time of making the order; if it met at the proper time, an adjournment to any day before the commencement of the next term, would be sufficient, as it is authorized to sit until the business was completed." This was quite enough to justify the conclusion of the court in that case.

There is no error in the record, and the judgment must be affirmed.